U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 2 2 2013

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RODNEY DALE SUMMERVILLE, §
§
Petitioner, §
§
v. § No. 4:12-CV-547-A
§
RICK THALER, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

MEMORANDUM OPINION
and
ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Rodney Dale Summerville, a

state prisoner currently incarcerated in Tennessee Colony, Texas,

against Rick Thaler, Director of the Texas Department of Criminal

Justice, Correctional Institutions Division, respondent. After

having considered the pleadings, state court records, and relief

sought by petitioner, the court has concluded that the petition

should be denied.

I. Factual and Procedural History

In 2001 petitioner was charged by separate indictments with

(1) possession of less than a gram of heroin with use of a deadly

weapon, (2) possession of 4 to 200 grams of cocaine with intent

to deliver with use of a deadly weapon, and (3) unlawful

possession of a firearm by a felon in the 371st Judicial District

Court of Tarrant County, Texas, cause numbers 817992D, 817994D,

and 818003D, respectively. (01State Habeas R. at 26; 02State

Habeas R. at 26; 03State Habeas R. at 25)[1] The indictments also

included enhancement and habitual-offender paragraphs alleging

prior felony convictions for theft, forgery, and burglary of a

habitation. (01State Habeas R. at 26-27; 02State Habeas R. at

26; 03State Habeas R. at 25)

On August 7, 2003, a jury found petitioner guilty of all

three offenses, petitioner pleaded true to the enhancement and

habitual-offender allegations, and the trial court ordered

preparation of a presentence investigation report (PSI). (RR,

---

[1]"01State Habeas R." refers to the state court record in
petitioner's state habeas application no. WR-66,304-01," "02State
Habeas R." refers to the state court record in his state habeas
application no. WR-66,304-02," "03State Habeas R." refers to the
state court record in his state habeas application no. WR-66,304-
03, "05State Habeas R." refers to the state court record in his
state habeas application no. WR-66,304-05, "06State Habeas R."
refers to the state court record in his state habeas application
no. WR-66,304-06, "07State Habeas R." refers to the state court
record in his state habeas application no. WR-66,304-07, "08State
Habeas R." refers to the state court record in his state habeas
application no. WR-66,304-08, "09State Habeas R." refers to the
state court record in his state habeas application no. WR-66,304-
09, and "10State Habeas R." refers to the state court record in
his state habeas application no. WR-66,304-10.

vol. 5, at 111-12; RR, vol. 6, at 3-10)  On October 10, 2003, following petitioner's trial on punishment, the trial court sentenced petitioner to sixty years' confinement for each offense, the sentences to run concurrently.  (01State Habeas R. at 28; 02State Habeas R. at 27; 03State Habeas R. at 27)

Petitioner appealed his convictions, but the Second District Court of Appeals of Texas affirmed the trial court's judgments, the Texas Court of Criminal Appeals refused his petitions for discretionary review, and the Supreme Court denied certiorari. *Summerville v. State*, Nos. 02-03-432-CR, 02-03-433-CR & 2-03-434-CR, 2005 WL 3081840 (Tex. App.-Fort Worth Nov. 15, 2005), *cert. denied,* 552 U.S. 1027 (2007); *Summerville v. State*, PDR Nos. 126-07, 127-07 & 128-07.  On January 11, 2012, the trial court entered nunc pro tunc orders in the drug-possession cases in cause numbers 0817992D and 0817994D amending and correcting the "Findings on Deadly Weapon" in the judgments to reflect that the judge, and not the jury, made affirmative deadly weapon findings. (01State Habeas R. at 28; 03State Habeas R. at 27)

Petitioner also filed nine state habeas applications relevant to this federal petition.  (01State Habeas R. at 2; 02State Habeas R. at 2; 03State Habeas R. at 2; 05State Habeas R. at 2; 06State Habeas R. at 2; 07State Habeas R. at 2; 08State

3

Habeas R. at 2; 09State Habeas R. at 2; 10State Habeas R. at 2)

In the first set of three, petitioner sought permission to file out-of-time petitions for discretionary review, and relief was granted. (01State Habeas R. at 2; 02State Habeas R. at 2; 03State Habeas R. at 2) *Ex parte Summerville*, 2006 WL 3691255 (Tex. Crim. App. Dec. 13, 2006). In the second set of three, petitioner challenged his convictions, and the Texas Court of Criminal Appeals denied relief with written order. (05State Habeas Supp. R. at cover; 06State Habeas Supp. R. at cover) *Ex parte Summerville*, 2011 WL 86530 (Tex. Crim. App. Jan. 11, 2012) (order). In the third set of three, petitioner challenged the trial court's January 11, 2012, nunc pro tunc orders amending the "Findings on Deadly Weapon," which were denied without written order on the findings of the trial court. (08State Habeas R. at cover; 09State Habeas R. at cover; 10State Habeas R. at cover) This federal petition for writ of habeas corpus followed.

The state appellate court summarized the background facts of the case as follows:

> North Richland Hills Police Officer Harold Ratliff received information from a confidential informant that several people were manufacturing drugs at a house in North Richland Hills. Officer Ratliff drove by the house and made sure that it matched the informant's description. Officer Ratliff discovered from a 911 call made from the house that appellant and Janet

4

Summerville lived at the address.  A driver's license
check revealed that [petitioner] had an arrest warrant
for a parole violation.  On August 29, 2001, while
conducting surveillance on the house, Officer Ratliff
saw [petitioner] get into a truck and drive away.
Officer Ratliff then stopped [petitioner] and arrested
him on the parole violation warrant.  After arresting
[petitioner], Officer Ratliff began searching
[petitioner]'s truck.  He opened a brown leather case
and found a .45 caliber handgun.  In the same leather
case, Officer Ratliff found two eyeglass cases that
contained cocaine and heroin.  Officer Ratliff also
found a nine-millimeter handgun and an SKS rifle in
[petitioner]'s truck.

(01State Habeas R. at 42-43)

### D.  Issues

Petitioner claims are multifarious and addressed as

thoroughly as practical.  His claims are construed as follows:

(1)  The simultaneous prosecution for the "use or
     exhibit" of a firearm in relation to the
     underlying drug-possession offenses and felon in
     possession of a firearm punished him twice for the
     same offense in violation of double jeopardy
     (ground one);

(2)  His Fourth Amendment rights were violated by the
     search of his vehicle incident to his arrest and
     the search was unreasonable (ground two);

(3)  He received ineffective assistance of counsel at
     trial and on appeal (grounds three-ten, eleven,
     and thirteen);

(4)  His constitutional rights were violated by the
     trial court's admission of testimony that
     petitioner had been "cooking dope" at his
     residence and entry of the nunc pro tunc orders
     reforming the judgments in cause numbers 0817992D

and 0817994D (grounds ten and twelve); and

    (5)  His sentence was illegally enhanced (ground fourteen).[2]

(Pet. at 6-7E)

### E.   RULE 5 STATEMENT

Respondent does not believe the petition is barred by limitations or successive.   (Resp't Ans. at 5)

### F.   DISCUSSION

### Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.   28 U.S.C. § 2254(d).   A decision is contrary to clearly established federal

---

[2]To the extent petitioner attempts to raise new factual and/or legal arguments in his reply brief, they are not considered.   See United States v. Rodriguez, 602 F.3d 346, 360 (5th Cir. 2010).

law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 1. *Double Jeopardy*

Petitioner claims the simultaneous prosecution of him for committing the drug offenses with a deadly weapon and for being a felon in possession of a firearm punished him twice for the same offense in violation of double jeopardy.  (Pet. at 6)

The Double Jeopardy Clause is meant to protect against both multiple prosecutions and, relevant here, multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161,165 (1977). Where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  In other words, where the question of multiplicity arises, the question becomes whether separate and distinct prohibited acts, made punishable by law, have been committed.

Relying on *Brown* and *Blockburger,* and applicable state law, the state habeas court found petitioner had presented no authority to support his claim that a conviction with a deadly weapon finding is the same offense as unlawful possession of a firearm and entered the following legal conclusions on the issue:

8

8.   To determine whether the same act violates two
     distinct statutory provisions, the test is whether
     each provision requires proof of a fact which the
     other does not.

9.   The elements of unlawful possession of a firearm
     by a felon at the time of Applicant's offense were
     as follows:
     a.   A person convicted of a felony,
     b.   possesses a firearm after conviction,
          and
     c.   (1) before the fifth anniversary of the
          person's release from confinement or
          supervision at his home or (2) at any
          time at any other location.

10.  [An affirmative deadly weapon finding is
     appropriate] "when it is shown that a deadly
     weapon as defined in Section 1.07, Penal Code, was
     used or exhibited during the commission of a
     felony offense or during immediate flight
     therefrom, and that the defendant used or
     exhibited the deadly weapon or was a party to the
     offense and knew that the deadly weapon would be
     used or exhibited.  On an affirmative finding
     under this subdivision, the trial court shall
     enter the finding in the judgment of the court.
     On an affirmative finding that the deadly weapon
     was a firearm, the court shall enter that finding
     in its judgment."

11.  The offense of unlawful possession of a firearm by
     a felon requires that the defendant be a prior
     felon.

12.  A deadly weapon finding requires the use or
     exhibition of a deadly weapon during the
     commission of a felony.

13.  Unlawful possession of a firearm by a felon and a
     deadly weapon finding each contain an element not
     found in the other.

9

14. Convictions for unlawful possession of a firearm
    and a separate felony with a deadly weapon finding
    do not violate the protections against double
    jeopardy.

15. Applicant has failed to prove that his convictions
    violate double jeopardy.

(05State Habeas Supp. R. at 21, 26-27; 06State Habeas Supp. R. at
21, 26-27; 07State Habeas R. at 261, 266-67) (citations omitted)

Petitioner has not demonstrated that the state court acted

unreasonably or contrary to clearly established Supreme Court law

in its adjudication of his double jeopardy claim.  It is clear by

a reading of both statutes that there is no double jeopardy

violation.  As noted by the state court, the offense of

possession of a firearm by a convicted felon requires proof that

the defendant has been previously convicted of a felony; whereas,

a deadly weapon finding requires proof of use or exhibition of a

deadly weapon during the commission of a felony.  Therefore, each

offense contains an element not present in the other, and

petitioner's double jeopardy argument fails.

## 2.  *Fourth Amendment*

Petitioner claims that his Fourth Amendment rights were

violated by the search of his vehicle incident to his arrest

because the search was unreasonable under *Arizona v. Gant*, 556

U.S. 332 (2009).[3]

In *Arizona v. Gant,* the Supreme Court held that police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. 556 U.S. at 332.   The Supreme Court did not hold that the newly declared constitutional law regarding reasonable searches applied retroactively to any cases, let alone to cases on collateral review.   *See Tyler v. Cain,* 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive").

The state habeas court rejected this claim because the mandate in petitioner's appeals issued on July 25, 2007, *Arizona v. Gant* was rendered on April 21, 2009, and the case has not been held to be retroactive to cases on collateral review.   (05State

---

[3]Petitioner also claims the search incident to his arrest violated the state constitution and entitled him to a jury instruction under article 38.23 of the Texas Code of Criminal Procedure for the jury to disregard evidence if it believed, or had reasonable doubt, that the evidence was illegally obtained. (Pet. at 6)   Violations of the state constitution or state criminal procedure are not cognizable in federal habeas review. *See Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011).   Thus, these claims are not addressed.

Habeas Supp. R. at 25, 34; 06State Habeas Supp. R. at 25, 34;
07State Habeas R. at 265,273)  Petitioner has not demonstrated
that the state court acted unreasonably or contrary to clearly
established federal law in its adjudication of his Fourth
Amendment claim.

Petitioner's convictions became final on November 13, 2007,
when the Supreme Court denied writ of certiorari, over a year
before the Supreme Court issued its decision in *Arizona v. Gant.*
Therefore, the holding in *Gant* does not apply to his case.
Further, as noted by respondent, petitioner's Fourth Amendment
claim was addressed and rejected by the state courts under
Supreme Court precedent at the time, and petitioner is not
entitled to relitigate the claim in a federal forum under *Stone
v. Powell*, 1976, 428 U.S. 465 (1976).

### 3.  *Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of
counsel at trial and on appeal.  (Pet. at 7-7E)  A criminal
defendant has a constitutional right to the effective assistance
of counsel at trial and on a first appeal as of right.  U.S.
Const. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95
(1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984);

*Anders v. California*, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*.  466 U.S. at 668.  *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.  Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is

13

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner was represented at trial by J. Rex Barnett and on appeal by David Richards.  The state habeas judge conducted a hearing by affidavit on petitioner's ineffective assistance claims.

### *Trial Counsel*

Petitioner claims trial counsel was ineffective by failing to (1) file a motion for a new trial within thirty days, (2) request a lesser included offense instruction, (3) object to hearsay evidence and a nude photograph of petitioner, and (4) "audit" the PSI and review it with petitioner.  (Pet. at 7B-7D)  Trial counsel filed two affidavits in response to petitioner's claims against him, wherein he responded as follows:

> **A.  Failure to file a motion for new trial within 30 days.**
>
> Applicant states that the undersigned attorney failed to file a motion for new trial, even though applicant requested that he do so.  The undersigned attorney has checked his file in this case, and reviewed his correspondence with the Applicant, and finds no notes regarding the filing of [a] motion for new trial, nor any mention of it in Applicant's letters prior to the expiration of the 30 day period for filing

14

such a motion.  The undersigned attorney has no
recollection of such request made, and was told by the
Applicant subsequent to trial that attorney David
Richards was being hired for the appeal.  Subsequent to
David Richards substituting in as appellate counsel,
the undersigned attorney did not see any necessity for
filing a motion for new trial.

**B.  Failure to request lesser included offense:**

The Applicant claims that the undersigned attorney
should have requested a charge on the lessor included
offense of possession under one gram, without the
deadly weapon enhancement to a third degree felony.
However, the record reveals that the jury WAS charged
as to the elements of a state jail felony only – the
third degree enhancement was treated as a punishment
issue, and decided by the trial court.

.  .  .

**D.  Special issue as to affirmative find[ing] of a
deadly weapon.**

At the Appellant's [sic] trial, the finding of an
affirmative use of a deadly weapon was treated as a
punishment issue, and handled in the manner of other
punishment enhancements, such as the habitual offender
allegations.  The undersigned attorney would note,
however, that none of the offenses with which the
Applicant was charged had the use of a deadly weapon as
an element of the offense, but was rather alleged as a
separate allegation in the indictment.  At trial, the
Applicant "stood mute" on the deadly weapon
allegations, and the undersigned attorney did not see
where any affirmative finding on a deadly weapon was
made on the record by the trial court.  The judgment
reflects that the jury affirmatively found the use of a
deadly weapon, but upon reviewing the record the
undersigned attorney does not see where the issue of
the use of [a] deadly weapon was ever considered by the
jury, as there was no charge on it, and they were not
read the portions of the indictment which contained the

15

deadly weapon allegations.  While the undersigned
attorney has not researched this issue for this
affidavit, it appears that there was never an express
finding by the jury that there was an affirmative
finding of a deadly weapon, and questions as to whether
the trial court had . . . authority to make such a
finding in this case.  [The undersigned attorney "did
not request the jury be instructed on the deadly weapon
issue at punishment because the trial court decided
punishment."

. . .

## G.   Other hearsay evidence.

Applicant contends that, in addition to the
objections made by the undersigned attorney regarding
police testimony that they had received a tip that
Applicant was "cooking dope" at his residence, the
undersigned attorney failed to object also on the basis
of hearsay.  However, the testimony was made to show
why the police had Applicant's house under
surveillance, and not for the truth of the matter
asserted, and the undersigned attorney did not think
that hearsay was an appropriate objection.

. . .

## I.   Presentence Investigation Report:

It is the undersigned attorney's usual practice to
give a copy of the pre-sentence investigation report to
his clients prior to trial - in fact, the undersigned
attorney can state that, to the best of his memory, he
has never NOT gone over a PSI report with a client
prior to sentencing.  The undersigned attorney believes
that he did personally take a copy of the PSR [sic] to
the Tarrant County Jail and discuss it with Applicant;
however, as this would have occurred six years ago, the
undersigned attorney[] has only a vague recollection of
doing so, and the undersigned attorney's belief that he
did go over the report with the Applicant is based
mostly upon the undersigned attorney's usual practice,

and not on any specific recollections.

**J.  Nude photo admitted into evidence.**

The Applicant claims that a nude photograph of himself was introduced into evidence however the undesigned attorney can find no such photo in the Exhibit volume of the record, and does not know what photograph the Applicant is referring to.

(05State Habeas R. at 199-02; 05State Habeas Supp. R. at 17; 06State Habeas R. at 196-99; 06State Habeas Supp. R. at 17; 07State Habeas R. at 193-96)

Based on counsel's affidavit and the state court records,

the state habeas court entered the following relevant findings of

fact regarding petitioner's claims:

25. During the punishment hearing, Applicant advised the trial court that he was "satisfied with" Hon. Barnett's representation.

26. Hon. Barnett can find no where in his file or notes that Applicant requested that he file a motion for new trial.

27. When the Court announced sentence, Hon. Barnett advised the Court that Hon. David Richards was going to be hired on appeal.

28. Hon. David Richards was then hired for Applicant's appeal.

29. Hon. Barnett did not see the need for filing a motion for new trial after Hon. Richards had been hired.

30. There is no evidence when Hon. David Richards was hired.

31. Hon. Barnett did not request a lesser included

17

instruction on possession without the deadly
weapon enhancement because that was the offense
the jury was instructed on.

. . .

33.   Hon. Barnett did not request a special instruction
on the affirmative finding of the deadly weapon
because it was presented to the trial court as a
punishment issue.

34.   Hon. Barnett did not request the jury be
instructed on the deadly weapon issue at
punishment because the trial court decided
punishment.

. . .

37.   Hon. Barnett did not object to the police
testimony that they were told Applicant was
"cooking dope" because it was contextual evidence
to explain why law enforcement had Applicant's
house under surveillance.

. . .

42.   Hon. Barnett always goes over the presentence
investigation report with clients.

43.   Hon. Barnett is confident that he personally
brought the presentence investigation report to
the jail and discussed it with Applicant as it was
his standard and usual practice; however, he only
has a vague recollection of doing so.

44.   Applicant presents no evidence that Hon. Barnett
did not discuss the presentence investigation
report with him.

45.   Applicant presents no evidence to support his
claim that the presentence investigation report
contained material errors.

46. Applicant presents no evidence that he advised
    Hon. Barnett that the presentence investigation
    report contained material errors.

47. Hon. Barnett advised the Court on the record that
    he and Applicant had no objection to the
    presentence investigation report.

48. Hon. Barnett's closing argument at the punishment
    phase indicates that he was aware of the contents
    of the presentence investigation report.

49. This Court has knowledge that the presentence
    investigation report includes numerous prior
    convictions in addition to the three convictions
    Applicant takes issue with.

50. The State's closing argument referred to
    Applicant's "lengthy, lengthy criminal history"
    and his "three penitentiary trips."

51. There is no evidence that the error alleged by
    Applicant affected his punishment.

52. Applicant alleges that a photo of Applicant nude
    and asleep in bed was admitted into evidence
    during the guilt/innocence phase.

53. Applicant presents no evidence to support his
    claim that a nude photo was presented at trial.

54. Hon. Barnett does not know to which photo
    Applicant is referring to as the "nude photo."

55. This Court finds no nude photo being referred to
    in the record on guilt/innocence.

(05State Habeas Supp. R. at 23-25; 06State Habeas Supp. R. at 23-
25; 07State Habeas R. at 263-65) (citations to the record
omitted)

Based on its findings, and applying *Strickland* and relevant

19

state law, the court entered the following legal conclusions in

recommending denial of the claims:

59. Applicant has failed to prove that counsel should
have filed a motion for new trial.

60. Because Applicant was charged on the state jail
felony without the deadly weapon finding,
Applicant has failed to prove that Hon. Barnett
should have requested a lesser included offense
instruction.

61. Because the deadly weapon was presented at
punishment, Applicant has failed to prove that
counsel should have requested a special
instruction on the deadly weapon finding in the
jury charge.

. . .

64. "Same transaction contextual evidence" is evidence
reflecting the context in which the criminal act
occurred.

65. Extraneous offenses may be admissible as "same
transaction contextual evidence" when "several
crimes are intermixed, or blended with one
another, or connected [s]o that they form an
indivisible criminal transaction."

66. Counsel's decision to not object to the "cooking
dope" testimony on the basis of hearsay was the
result of reasonable trial strategy.

. . .

68. Applicant has failed to prove that counsel failed
to properly review the presentence investigation
report.

69. Applicant has failed to prove that a nude
photograph was admitted at trial.

20

70.  Applicant has failed to prove that counsel failed
     to properly object to evidence.

71.  Applicant has failed to prove that his trial
     counsel's representation fell below an objective
     standard of reasonableness.

     .  .  .

73.  Applicant has failed to prove that a reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     filed a motion for new trial.

74.  Applicant has failed to prove that a reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     requested a lesser included offense instruction in
     the jury charge.

     .  .  .

76.  Applicant has failed to prove that a reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     requested a special instruction on the deadly
     weapon finding in the jury charge.

     .  .  .

79.  Applicant has failed to prove that a reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     objected to the police testimony.

     .  .  .

81.  Applicant has failed to prove that a reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     objected to the presentence investigation report.

82.  Applicant has failed to show that there is a

21

> reasonable probability that, but for the alleged
> acts of misconduct, the result of the proceeding
> would have been different.
>
> 83.   Applicant has failed to prove that he received
>       ineffective assistance of trial counsel.

(05State Habeas R. at 30-33; 06State Habeas Supp. R. at 30-33;
07State Habeas R. at 269-72) (citations omitted)

The Texas Court of Criminal Appeals, in turn, denied habeas

relief with written order.  This court must accord the state

habeas court's findings a presumption of correctness pursuant to

§ 2254(e)(1), and petitioner has failed to rebut this presumption

by clear and convincing evidence.  Thus, deferring to the state

court's findings, petitioner has presented no argument or

evidence in this federal habeas action that could lead the court

to conclude that the state courts unreasonably applied the

standards set forth in *Strickland* based on the evidence presented

in state court.  28 U.S.C. § 2254(d).

Applicant's claims are largely conclusory or speculative,

such as the existence of a nude photo, with no legal or

evidentiary basis, contradicted by the record, involve strategic

decisions by counsel, or would have required counsel to make

frivolous motions or objections, which are either insufficient to

raise a constitutional issue and/or outside this court's preview

on federal habeas review.  *See Strickland,* 460 U.S. at 689

(holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) (holding conclusory arguments are insufficient to support claim of ineffective assistance); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections").

Overall, trial counsel devised a viable defense, filed and argued pretrial motions, conducted voir dire, made meritorious objections and motions during trial, cross-examined state witnesses, called witnesses on petitioner's behalf, and gave closing arguments. Even if petitioner could demonstrate deficient performance, the right to counsel does not require errorless counsel. *Johnson v. Estelle*, 704 F.2d 232, 239 (5th Cir. 1983). A petitioner is required to demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981). Having reviewed the entirety of the record, counsel's performance was not outside the wide range of professionally competent assistance, and petitioner

23

has failed to show that, but for counsel's acts or omissions, he would have been acquitted of the charges or that his sentences would have been significantly less harsh. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

### *Appellate Counsel*

Petitioner claims appellate counsel was ineffective by failing to raise issues relating to (1) the legality and sufficiency of the evidence to support the deadly weapon findings, (2) the trial court's abuse of discretion in allowing the state to offer and read his stipulation to a prior 1995 conviction for burglary of a building case and the judgment reflecting the length of his sentence and in overruling his objection to the introduction of certain photographs, and (3) the legal and factual sufficiency of the evidence to support his cocaine conviction when the state's forensic expert, Max Courtney, failed to identify "material" containing cocaine. (Pet. at 7-7E; RR, vol. 4, at 143-45)

Appellate counsel also filed two affidavits in response to petitioner's allegations. In the first, counsel responded as follows:

> Mr. Summerville retained me to represent him in
> connection with his direct appeal in the three
> convictions forming the basis of the instant writ.

I have reviewed Mr. Summerville's present complaints against me and believe none of them have merit. I raised two points of error on direct appeal. The first point addressed the ruling on Mr. Summerville's Motion to Suppress Evidence. The second addressed the trial court's adverse ruling on defense counsel's objection to the introduction of extraneous offense testimony.

I believe the two issues raised were the only meritorious points presented on appeal. As to the sufficiency of the evidence issues Mr. Summerville argues I should have raised, I can state that in every appellate brief I draft I always look to determine whether a sufficiency point should be raised. The Court of Appeals opinion accurately sets forth the pertinent facts, and viewing those facts in a light most favorable to the verdict, I saw no hope for a successful sufficiency challenge.

As to Mr. Summerville's argument that I failed to complain of other evidentiary matters, I have repeatedly advised Mr. Summerville that a trial objection was necessary to preserve those issues for appellate review. Without an objection and absent fundamental error, those issues would have presented nothing for review.

Mr. Summerville is a pleasant and intelligent person. He has used the copy of the appellate record I sent him to form arguments that he wishes would have been made at trial and, had those arguments been ruled on in favor of the State, then wishes I would have raised on direct appeal. His writ contains virtually no record references. Before drafting this affidavit I have reread the appellate record and cannot find the adverse rulings he now suggests should have been raised on appeal. Similarly, I cannot find several of the appendices Mr. Summerville avers he attached to his writ, such as the letter in which I "promised" him I would raise certain issues.

My theory in determining what issues should be

presented on appeal is that "good" issues should be
advanced and that "bad" issues only tend to weaken and
potentially distract the reviewing court's attention to
the stronger issues.  In my professional opinion, there
were only two meritorious issues present in Mr.
Summerville's appellate record, and those were the two
issues I advanced on appeal.

I recall speaking to Mr. Summerville and advising him
of the general rule that (except with respect to
sufficiency complaints) it was necessary that a trial
court ruling be pursued to an adverse ruling.

The evidentiary admission issues he now believes I
should have (but did not) brief were not preserved for
appellate review.  The sufficiency based issues were
not briefed because, under the proper standard of
review, they would have been summarily overruled.  Had
point one on appeal been sustained, an argument could
have been made in the trial court that, absent the
evidence discovered in the search of his vehicle, the
cases should have been dismissed for lack of evidence,
but the Court of Appeals held that the trial court's
ruling on that issue was correct.

(05State Habeas R. at 262-63; 06State Habeas R. at 256-57;
07State Habeas R. at 258-59)

In the second affidavit, counsel responded specifically to

the issue of the deadly weapon findings in cause numbers 0817992D

and 0817994D as follows:

My understanding is that this Court desires an
affidavit from me explaining my reasons for not
raising, on direct appeal, a claim that the trial court
erred in sentencing Mr. Summerville to a sentence in
excess of 20 years in each case.  He contends that his
sixty year sentence in each case was the result of a
trial court error in which the judge made a legal error
in believing that the jury had made an affirmative
weapon finding in each case.  In another [sic] words,

26

Mr. Summerville contends that the notations in the written judgements to the effect that the jury made an affirmative finding on use of a deadly weapon constituted a legal error for which he was entitled to reversal for new sentencing.

Because these cases were tried over 7 years ago, I cannot remember exactly what issues I considered raising in the brief.  There are always potential issues that I decide not to raise in briefs.  Those issues are normally not raised because of one or more deficiencies in the potential legal argument such as waiver, invited error, or clearly harmless error.  In recent weeks I have gone over that record pertinent to Mr. Summerville's present complaint.

In reviewing the written judgements I strongly believe that the reference to the "jury" having made the deadly weapon finding was a clerical error, not legal error.  The jury was not called upon to make that determination.  Rather it was the judge: The Honorable James Wilson.  In fact, Mr. Summerville was not arraigned on the deadly weapon enhancement paragraph until after the jury had been dismissed, and only after the trial court had begun hearing testimony at the punishment phase.  I believe that the judge, not the jury, made the deadly weapon findings, and that the notation to the contrary was a clerical mistake.

Because the error in my opinion was a clerical error and not a legal error, if the issue had been raised in my brief on direct appeal, I have no doubt that the State would have had the appeal abated to the trial court for entry of a *Nunc Pro Tunc* Order correcting the clerical error.

I have personally spoken to Judge Wilson and the State's lead prosecutor David Hagerman, who both advised me that they too consider it a clerical error.

I have previously drafted a *Nunc Pro Tunc* Motion listins [sic] myself as a Real Party in Interest: However, the Appellate Section of the Tarrant County

27

D.A.'s Office advised that they believed I 1.) lacked
standing to have the correction made and 2.) I would
have a conflict of interest in correcting the
judgement.

A member of the Appellate Section of the D.A.'s
Office advised that the State would be moving to make a
*Nunc Pro Tunc* Correction to the judgement to remedy the
clerical error.  However, they would do so only after I
file the instant affidavit.  While I believe that I do
have standing and that it is not a conflict of interest
for a defense attorney made the subject of an
ineffective assistance of counsel claim to move for a
*Nunc Pro Tunc* Correction to wording in a judgement that
is the subject of the post conviction writ, I have
agreed to allow the State to make the motion subsequent
to the filing of this affidavit.

(05State Habeas Supp. R. at 15-16; 06State Habeas Supp. R. at 15-16)

The trial judge also provided an affidavit stating:

While the jury decided guilt/innocence, Applicant
elected to have the trial court assess punishment.  At
the conclusion of the punishment hearing, though not
orally pronounced, I made an affirmative deadly weapon
finding in Cause Numbers 0817992D and 0817994D.  Any
reference to the contrary in the court's proceedings is
the result of a clerical error.  Likewise, the notation
in the judgment that the jury made the affirmative
deadly weapon finding is a clerical error.

(05State Habeas Supp. R. at 36; 06State Habeas Supp. R. at 36)

Based on the affidavits and the state court records, the

state habeas court entered the following relevant findings of

fact on the issues:

10.  Hon. Richards did not raise a legal sufficiency
     claim on direct appeal because he concluded that

28

the evidence was not legally insufficient.

. . .

12.  Applicant presents no evidence, or authority, that
     a legal sufficiency claim would have been
     successful on appeal.

13.  Hon. Richards only raised the two meritorious
     claims that he believed had a chance to be
     successful.

14.  Hon. Richards considered the evidentiary
     sufficiency points and found they would have no
     merit on appeal.

15.  The trial court made the affirmative deadly weapon
     finding[s].

16.  The judgment stating that the *jury* found the
     affirmative deadly weapon finding[s] was a
     clerical error.

17.  Applicant was indicted for "intentionally or
     knowingly possess[ing] a controlled substance,
     namely heroin, of less than [a] gram, including
     any adulterants or dilutants" and "intentionally
     or knowingly possess[ing] a controlled substance,
     namely cocaine of four grams or more but less than
     two hundred grams, including any adulterants or
     dilutants, with intent to deliver said controlled
     substance."

18.  Applicant's claim that Max Courtney testified
     regarding "cocaine" is an attack on Cause Number
     0817994D.  [Max Courtney testified that the
     chemical tests on the material resulted in more
     than four grams but less than 200 grams of
     "material containing cocaine" including
     adulterants and/or dilutants.]

19.  The deadly weapon was a punishment issue.

20.   The jury was not charged on the deadly weapon
      finding[s].

21.   Because the deadly weapon finding[s] [were]
      not submitted to the jury, Hon. Richards properly
      did not allege on direct appeal that the jury
      charge was defective.

22.   Applicant presents no evidence, or authority, that
      his photograph claims would have been successful
      on appeal.

(05State Habeas Supp. R. at 21-22; 06State Habeas Supp. R. at 21-
22; 07State Habeas R. at 261-65) (citations to the record
omitted)

Based on its findings, and applying the *Strickland* standard

and relevant state law, the state habeas court entered the

following legal conclusions in recommending denial of the claims:

27.   An attorney is prohibited from raising claims on
      appeal that are not founded in the record.

28.   Applicant has failed to prove that the evidence
      was legally insufficient to support [his]
      conviction[s].

29.   Applicant has failed to prove that counsel should
      have raised on direct appeal that the evidence was
      legally insufficient to support [his cocaine]
      conviction.

30.   Max Courtney properly testified that the
      "material" contained cocaine and adulterants and
      dilutants.

31.   Because Max Courtney's testimony was proper,
      Applicant has failed to prove that counsel should
      have raised on direct appeal that Courtney failed
      to properly identify the "material."

32. Because the jury was not charged on the deadly
    weapon finding[s], Applicant has failed to prove
    that counsel should have argued the charge[s]
    w[ere] defective.

33. Applicant has failed to prove that the evidence
    was factually insufficient to support []his
    conviction[s].

34. Applicant has failed to prove that counsel should
    have raised on direct appeal that the evidence was
    factually insufficient to support []his
    conviction[s].

35. Applicant has failed to prove that counsel should
    have raised on direct appeal that the photographs
    were inadmissible.

36. Counsel properly alleged on direct appeal that the
    trial court erred in denying Applicant's motion to
    suppress.

37. A party fails to carry his burden to prove
    ineffective assistance of counsel where the
    probability of a different result absent the
    alleged deficient conduct sufficient to undermine
    confidence in the outcome is not established.

38. Applicant has failed to prove that a reasonable
    likelihood exists that his sufficiency of the
    evidence claims would have been successful on
    appeal.

39. Applicant has failed to prove that a reasonable
    likelihood exists that his photograph issue would
    have been successful on appeal.

40. Applicant has failed to prove that a reasonable
    likelihood exists that a separate illegal search
    and seizure claim would have been successful on
    appeal.

41. The Second Court of Appeals has the authority to

correct a judgment so that it "speaks the truth" when there is sufficient evidence to do so.

42. Had appellate counsel raised on direct appeal that the jury had not made an affirmative deadly weapon finding, the Court of Appeals would have reformed the judgment[s] to correctly reflect that the trial court made . . . affirmative deadly weapon finding[s] based on the record.

43. Reforming the judgment[s] to correctly state that the trial court made the affirmative deadly weapon finding and not the jury would not be a change in the outcome of the proceeding.

44. Because the judgment[s] would have merely been reformed by the Second Court of Appeals, there is no reasonable probability that a different outcome would have resulted had counsel alleged on direct appeal that the jury did not make . . . [the] affirmative deadly weapon finding[s].

45. Applicant has failed to show that there is a reasonable probability that, but for the alleged acts off misconduct, the result of the proceeding would be different.

46. Applicant has failed to prove that he received ineffective assistance of appellate counsel.

(05State Habeas Supp. R. at 28-30; 06State Habeas Supp. R. at 28-30; 07State Habeas R. at 267-69) (citations omitted)

Additionally, the state habeas court entered findings of fact relevant to petitioner's stipulation to his prior 1995 conviction for burglary of a building in cause number 0818003D:

14. Hon. Richards did not allege on direct appeal that the trial court improperly allowed evidence about Applicant's prior conviction because he did not feel that it would be meritorious.

32

15. The parties stipulated to Applicant's prior
    conviction.

16. Applicant objected to the "inclusion of the
    sentence in the copy of the judgment that is being
    entered along with the stipulation which is twenty
    years."

17. The objection was overruled.

18. Applicant and his counsel signed the stipulation.

19. There is no evidence that Applicant requested that
    the stipulation be withdrawn because it included
    the additional information attached.

20. The stipulation was published to the jury.

(07State Habeas R. at 261; RR, vol. 8, States's Ex. 9)

Based on its findings, and applying relevant state law, the

state habeas court entered the following legal conclusions in

recommending denial of the claim:

33. Applicant has failed to prove that counsel should
    have raised on direct appeal that the trial court
    erred by admitting the stipulation that he signed.

    . . .

40. Applicant has failed to prove that a reasonable
    likelihood exists that his stipulation error would
    have been successful on appeal.

(07State Habeas R. at 268-69)

The Texas Court of Criminal Appeals, in turn, denied habeas

relief with written order. As previously noted, this court must

accord the state habeas court's findings a presumption of

33

correctness pursuant to § 2254(e)(1), absent clear and convincing evidence in rebuttal. Thus, deferring to the state court's findings, petitioner has presented no argument or evidence in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

Under *Strickland,* appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is appellate counsel's duty to assess and choose among potential issues, according to his or her professional judgment of their merits and the strategic approach being taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Because petitioner identifies no meritorious issues that counsel should have raised on direct appeal, the state courts' rejection of his claims was not contrary to or an unreasonable application of *Strickland*.

### 4. *Extraneous Offense Evidence/Nunc Pro Tunc* Orders

Petitioner claims (1) the trial court erred by admitting extraneous offense evidence that the police were informed by an informant that petitioner was "cooking dope" at the residence and (2) his constitutional rights were violated by the trial court's

34

entry of the nunc pro tunc orders over eight years after the written judgments were entered. (Pet. at 7C-7D)

As to petitioner's first claim, both the appellate and state habeas court found that, as a matter of state law, the extraneous offense evidence that petitioner was "cooking dope" was admissible as "same transaction contextual evidence" explaining why law enforcement had petitioner's house under surveillance. (05State Habeas Supp. R. at 24; 06State Habeas Supp. R. at 24; 07State Habeas R. at 263)   Specifically, in overruling the issue on appeal, the appellate court stated:

> We review the trial court's admission of evidence
> for abuse of discretion.   Rule 403 of the Texas Rules
> of Evidence provides that relevant evidence "may be
> excluded if its probative value is substantially
> outweighed by the danger of unfair prejudice, confusion
> of the issues, or misleading the jury, or by
> considerations of undue delay, or needless presentation
> of cumulative evidence."   Courts have allowed evidence
> of extraneous offenses to establish the circumstances
> leading to the officer's approach of the defendant.
>
> In *Cano v. State,* the defendants were convicted of
> delivery of a controlled substance.   The Corpus Christi
> Court of Appeals held that the trial court did not
> abuse its discretion by admitting evidence that police
> had received information that the defendants were
> dealing drugs out of their house in order to show why
> the police had focused their investigation on the
> defendants.   Moreover, the court held that the
> probative value of the evidence was not substantially
> outweighed by the danger of unfair prejudice.
>
> Similarly, in the present case, evidence that

35

> appellant lived at a house in which drugs were being
> manufactured was admissible to show why Officer Ratliff
> was watching appellant's house, why he ran a check on
> appellant's license, and why he followed appellant when
> appellant left the house.  Under the circumstances, the
> probative value of the evidence was not substantially
> outweighed by the danger of unfair prejudice.

*Summerville*, 2005 WL 3081840, at *3-4 (citations omitted).

As a general rule, a state court's evidentiary rulings justify the granting of habeas relief only if they violate a specific constitutional right or are so egregious as to render the entire trial fundamentally unfair.  *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999);  *Mullen v. Blackburn,* 808 F.2d 1143, 1145 (5th Cir.1987).  Petitioner has demonstrated neither requirement.  The trial court's decision was in accordance with state law, and, in any event, admission of the evidence was not so egregious that it makes the outcome of petitioner's trial fundamentally unfair.

As to petitioner's second claim, the state habeas court entered the following relevant findings of fact regarding the nunc pro tunc orders:

> 6.    The indictment[s] [included] a deadly weapon
>       notice.
>
> 7.    The original judgment[s] stated that the jury made
>       an affirmative deadly weapon finding.
>
> 8.    The deadly weapon was a punishment issue and was

36

presented to the judge.

9. At the conclusion of the punishment hearing, the trial court made an affirmative deadly weapon finding even though it was not orally pronounced.

10. The fact that the judgment[s] state[] that the <u>jury</u> made the finding and not the <u>judge</u> was a clerical error.

11. On January 11, 2012, the trial court signed a Nunc Pro Tunc Order [in each case] amending the deadly weapon finding from "[t]he jury affirmatively finds" to "[t]he judge affirmatively finds" based on the personal recollections of the trial judge.

(08State Habeas R. at 58; 09State Habeas R. at 58) (citations to the record omitted)

Based on its findings, and applying relevant state law, the state court entered the following legal conclusions in recommending denial of the claim:

4. "The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time."

5. The "trial court retains the power to enter a nunc pro tunc order correcting any 'clerical error' which may appear in the judgment."

6. "[A]n error in the entry of the judgment will be styled as 'clerical' in nature, so long as the error did not come about as the product of judicial reasoning."

7. A deadly weapon finding is not part of the sentence.

37

8.  "[A] trial court is not required to orally
    announce a deadly-weapon finding at sentencing if
    the allegation of use of a deadly weapon is clear
    from the face of the indictment."

9.  Because the deadly weapon was alleged in the
    indictment[s], the trial court was not required to
    orally pronounce the deadly weapon finding[s].

10. Because the affirmative deadly weapon finding[s]
    contained a clerical error, the Nunc Pro Tunc
    Order[s] [were] properly signed.

11. Applicant has failed to prove that the Nunc Pro
    Tunc Order[s] [were] improper.

(08State Habeas R. at 59; 09State Habeas R. at 59) (citations
omitted)

The Texas Court of Criminal Appeals, in turn, denied habeas

relief on the findings of the trial court.  Deferring to the

state court's findings, absent any evidence in rebuttal, and to

the state courts' interpretation and application of its own law,

petitioner fails to show the state courts' decision is contrary

to, or involves an unreasonable application of, clearly

established federal law or is based on an unreasonable

determination of the facts in light of the evidence before the

state courts.

Under Texas law, a nunc pro tunc judgment simply corrects

the written record to show the true judgment of the court.

*Alvarez v. State*, 605 S.W.2d 615 (Tex. Crim. App. 1980); *Smith v.*

38

*State*, 15 S.W.3d 294, 299 (Tex. App.–Dallas 2000, no pet.) (noting that trial court retains authority to enter a judgment nunc pro tunc to correct clerical errors in the judgment after the expiration of its plenary jurisdiction). Thus, the trial court validly entered the nunc pro tunc orders correcting what it found to be a clerical error.

### 5.   *Sentences*

Petitioner claims his sentences violate the double jeopardy clause due to the illegal use of prior convictions for enhancement purposes resulting in multiple punishments for the same offense. (Pet. at 7E) In the felon-in-possession case, the indictment alleged petitioner possessed a firearm and prior to that he was convicted of the felony offense of burglary of a building on May 17, 1995, in cause number 0542266D. (02State Habeas R. at 26) In the drug-possession cases, the "Enhancement Notice" alleges that prior to commission of the primary offense petitioner was finally convicted of the felony offense of theft on May 17, 1995, in cause number 0541395D. (01State Habeas R. at 26; 03State Habeas R. at 25)

Petitioner argues that because the convictions in cause numbers 0542266D and 0541395D resulted from the same criminal episode and the same criminal proceedings, they could not be

used, each for a separate purpose, because they were not
sequential.

The state habeas court entered the following relevant
findings of fact on the issue:

> 5.  Applicant's prior conviction for burglary of a
>     building in Cause Number 0542266D was used as an
>     element of [the felon-in-possession] offense.
>
> 6.  Applicant's prior conviction for felony offense of
>     theft . . . in Cause Number 0541395D was alleged
>     an enhancement prior conviction.
>
> 7.  Applicant alleges that his prior convictions for
>     burglary of a building and felony theft were part
>     of the same criminal episode.
>
> 8.  Applicant presents no authority to support his
>     claim that convictions arising from the same
>     criminal episode should be treated like the same
>     conviction.

(07State Habeas R. at 260-61) (record citations omitted)

Based on its findings, the state court records, applicable
state law, and the Supreme Court case of *Brown v. Ohio*,[4] the
state court entered the following legal conclusions in
recommending denial of the claim:

> 3.  "The double jeopardy clause protects against (1) a
>     second prosecution for the same offense after
>     acquittal; (2) a second prosecution for the same
>     offense after conviction; and (3) multiple
>     punishments for the same offense.

---

[4] *Id.* at 164-65.

4.   "[A] prior conviction is not available to enhance punishment for an offense of which it is an essential element."

5.   Applicant has failed to prove that two separate convictions arising from the same criminal episode are considered the same conviction for purposes of enhancement.

6.   Applicant has failed to prove that the use of burglary of a building as an element of the offense and theft as a prior conviction for enhancement violated the protections against double jeopardy.

(07State Habeas R. at 266) (citations omitted)

The Texas Court of Criminal Appeals, in turn, denied relief on the habeas court's findings. Deferring to the state court's findings, absent any evidence in rebuttal, petitioner has failed to demonstrate that the state courts' adjudication of the issue is contrary to, or an unreasonable application, of *Brown*. As did the state courts, this court finds no legal basis in support of the claim.

### *Evidentiary Hearing*

Petitioner requests an evidentiary hearing, however his claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011). Thus, no evidentiary hearing

is warranted.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED January __22__, 2013.


JOHN McBRYDE
UNITED STATES DISTRICT JUDGE